UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
DeSEAN J. OWENS,

                                  Plaintiff,

      - against -

COUNTY OF ORANGE, SHERIFF DuBOIS, and
CAPTAIN POTTER,

                                 Defendants.
---------------------------------------------------------------x

**OPINION & ORDER**

No. 22-CV-6754 (CS)

Appearances:

DeSean J. Owens
Ossining, New York
*Pro Se Plaintiff*

Kellie E. Lagitch
Richard B. Golden
Office of the Orange County Attorney
Goshen, New York
*Counsel for Defendants*

Seibel, J.

      Before the Court is the motion to dismiss of Defendants Sheriff DuBois, Captain Potter, and the County of Orange (the "County"). (ECF. No. 19.) For the following reasons, the motion is GRANTED, with leave to replead in one respect.

**I.    BACKGROUND**

      For the purposes of this motion, I accept as true the facts, but not the conclusions, set forth in Plaintiff's Complaint. (*See* ECF No. 1 ("Compl.").)

**A.    Factual Background**

      During the events relevant to this lawsuit, *pro se* Plaintiff DeSean J. Owens was a prisoner awaiting sentencing at the Orange County Jail in Goshen, New York, where he was held

in the Delta 2 housing unit. (*Id*. at 2, 4.)[1] According to Plaintiff, that unit was allotted only three half-hour visits per week (for a total of 90 minutes of weekly visitation) from December 2020 through September 2022, due to the COVID-19 pandemic. (*Id.* at 4.)

On April 15, 2022, Plaintiff filed an Inmate Grievance Form (the "Grievance"), maintaining that the 90 minutes of weekly visitation violated New York State minimum standards, which provide that inmates in county jails are entitled to two hours of visitation per week. (*Id.* at 7.) Approximately ten days later, a Grievance Coordinator accepted the Grievance and stated that an additional day would be added to the Delta 2 housing unit's visitation schedule. (*Id.*) But according to Plaintiff, no such day was ever added. (*Id.* at 4.)

On July 4, 2022, Plaintiff sent a notarized letter to Defendants DuBois and Potter (the "July 4 Letter"), (*id.* at 5, 8-9), where he explained how he had filed the Grievance, which did not result in an additional day being added to the Delta 2 visitation schedule, and reiterated his belief that the 90 minutes of visitation provided to Delta 2 inmates violated New York State minimum standards, (*id.* at 8-9). Plaintiff also noted that the visiting days allocated to his housing unit were Tuesday, Thursday, and Sunday, which prevented his family from seeing him because of the work schedule of his children's mother, and that he preferred that Friday or Saturday be added to the visitation schedule to accommodate them. (*Id.* at 9.) Plaintiff never received a response to the July 4 Letter. (*Id.* at 5.)

B. **Procedural History**

Plaintiff filed his Complaint on August 8, 2022. (*See* ECF No. 1.) On October 25, 2022, Defendants filed a pre-motion letter in anticipation of a motion to dismiss. (*See* ECF No. 12.) I

---

[1] All citations to the Complaint, (ECF No. 1), refer to page numbers set by the Court's Electronic Case Filing ("ECF") system.

2

held a pre-motion conference on January 6, 2023, at which I granted Plaintiff leave to amend and set a briefing schedule. (*See* Minute Entry dated Jan. 6, 2023.) Plaintiff never amended, and the instant motion, which Plaintiff did not oppose, followed. (*See* ECF Nos. 19-24.)

## II. LEGAL STANDARD

### A. Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

"In considering a motion to dismiss . . . pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).[2]  Here, Plaintiff attached two documents to his Complaint – the Grievance and the July 4 Letter – both of which may properly be considered on this motion. *See, e.g.*, *Jones v. New Penn Fin.*, No. 19-CV-1493, 2020 WL 8771252, at *2 (E.D.N.Y. Nov. 13, 2020) ("Because the Mortgage Statement, Note, Mortgage, and Payoff Letter are attached to the Complaint, these documents may properly be considered in evaluating the Motion.").[3]

    **B.**    ***Pro se* Plaintiffs**

Complaints by *pro se* plaintiffs are to be examined with "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010), interpreted "to raise the strongest arguments that they suggest," *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*).  Nevertheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

[3] The Court will send Plaintiff copies of all unpublished decisions cited in this Opinion & Order.

allegations" that the plaintiff has not pleaded.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

"Even when a *pro se* plaintiff fails to oppose a motion to dismiss, the court must still determine whether the complaint states a claim upon which relief may be granted."  *Chandler v. City of N.Y.*, No. 17-CV-4030, 2018 WL 3387199, at *2 (S.D.N.Y. May 14, 2018), *report and recommendation adopted*, 2018 WL 3384439 (S.D.N.Y. July 11, 2018); *see McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000) ("[T]he sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law.  If a complaint is sufficient to state a claim on which relief can be granted, the [*pro se*] plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal.").[4]

## III.  DISCUSSION

### A.  Procedural Due Process

Plaintiff alleges (presumably under 42 U.S.C. § 1983) that Defendants violated his right (presumably under the Fourteenth Amendment) to due process by failing to allocate two hours of visitation per week to the Delta 2 housing unit, as required by the relevant New York State regulations.  (*See* Compl. at 2, 4-5.)

"In order to establish a due process violation, [Plaintiff] first must show that he was deprived of a constitutionally-protected liberty or property interest.  If such a deprivation

---

[4] Defendants are thus incorrect in arguing in reply that Plaintiff's failure to oppose the motion is abandonment of the claims.  (*See* ECF No. 23 ¶ 5.)  Where a counseled plaintiff files an opposition but does not oppose specific arguments for dismissal, the unaddressed claims may be deemed abandoned, *see Sullivan v. City of N.Y.*, No. 14-CV-1334, 2015 WL 5025296, at *5 (S.D.N.Y. Aug. 25, 2015), *aff'd*, 690 F. App'x 63 (2d Cir. 2017), but where a plaintiff does not file an opposition at all, the Court must still determine whether the complaint states a claim upon which relief can be granted, *see, e.g.*, *Livingston v. Mejia*, No. 20-CV-2009, 2022 WL 976808, at *3 (S.D.N.Y. Mar. 31, 2022); *Saltis v. NuVasive, Inc.*, No. 19-CV-89, 2020 WL 4689787, at *2 (D. Vt. Mar. 13, 2020).

occurred, the court must then consider what process was due and whether it was provided." *Johnson v. Constantellis*, No. 03-CV-1267, 2005 WL 2291195, at *16 (S.D.N.Y. Aug. 10, 2005), *aff'd,* 221 F. App'x 48 (2d Cir. 2007); *see Leary v. Civil Serv. Emples. Ass'n*, No. 11-CV-716, 2012 WL 1622611, at *5 (S.D.N.Y. May 9, 2012) ("In order to establish a procedural due process violation, a plaintiff must:  (1) identify a protected property or liberty interest; (2) establish that governmental action with respect to that right amounted to a deprivation; and (3) demonstrate that the deprivation occurred without due process.").

Here, Plaintiff appears to allege that he had a liberty interest in the correct application of New York State minimum standards concerning visitation, which would have resulted in the Delta 2 housing unit receiving an additional 30 minutes of visitation per week.  (*See* Compl. at 4-5, 7.)  The standard to which Plaintiff is referring can be found section 7008.3(a) of title 9 of the New York Codes, Rules and Regulations ("NYCRR"), which applies to county jails and provides, in relevant part, that "each prisoner shall be entitled to at least two hours of visitation each week.  Each visit shall be at least 30 minutes." N.Y. Comp. Codes R. & Regs. tit. 9, § 7008.3(a) (2023).

But accepting as true Plaintiff's allegations that Defendants did not afford him the two hours of visitation per week required by section 7008.3, he cannot establish a due process violation because he "does not possess a protected liberty interest in having [Defendants] follow prison [regulations]." *Porter v. Bunch*, No. 16-CV-5935, 2019 WL 1428431, at *12 (S.D.N.Y. Mar. 29, 2019); *see Holland v. City of N.Y.*, 197 F. Supp. 3d 529, 548-49 (S.D.N.Y. 2016) ("It is well settled that a § 1983 claim brought in federal court is not the appropriate forum to urge violations of prison regulations or state law.  An alleged violation of a prison . . . regulation, in and of itself, does not give rise to a federal claim . . . .") (collecting cases); *White v. Rock*, No.

13-CV-392, 2016 WL 11478222, at *14 (N.D.N.Y. Feb. 23, 2016) ("Violations of state law do not give rise to claims under 42 U.S.C. § 1983, and, more specifically, a violation of a DOCCS directive does not state a claim for a constitutional violation under § 1983."), *report & recommendation adopted*, 2016 WL 1248904 (N.D.N.Y. Mar. 29, 2016); *Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002) ("[T]he law is settled that the failure to follow a DOCS Directive or prison regulation does not give rise to a federal constitutional claim."); *see also Suttles v. Annucci*, 112 N.Y.S.3d 327, 328 (App. Div. 2019) ("inmate visitation is not a liberty interest entitled to the protection of either the federal or state constitutions").

Insofar as Plaintiff is alleging that section 7008.3 itself specifically creates a protected liberty interest, that argument fails as well. To be sure, "[w]hile courts have uniformly rejected the claim that a liberty interest in prison visitation is inherent in the Due Process clause itself, state law has been found to create such an interest in certain contexts." *Hill v. Laird*, No. 06-CV-126, 2016 WL 3248332, at *10 (E.D.N.Y. June 13, 2016). The Supreme Court, however, has held that any such state law-created liberty interest

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Here, Plaintiff does not allege that he was deprived of all prison visitation. Instead, he maintains that his housing unit received 90 minutes of visitation per week, rather than the two hours contemplated by section 7008.3, (*see* Compl. at 4-5), and that the visitation schedule for his housing unit conflicted with his family's availability, (*see id.* at 9). Such allegations fail to establish an "atypical and significant hardship" sufficient to implicate a state-created liberty interest under *Sandin*. Indeed, even the deprivation of any right to visitation for significant

periods has been held not to implicate a liberty interest.  *See, e.g.*, *McLellan v. Chapdelaine*, No. 16-CV-2032, 2017 WL 388804, at *4 (D. Conn. Jan. 27, 2017) (loss of commissary and visitation privileges for sixty days did not constitute significant or atypical hardship); *Henry v. Coughlin*, 940 F. Supp. 639, 643 (S.D.N.Y. 1996) (dismissing claim for denial of visitation because "under *Sandin* the Plaintiff fails to allege a cause of action because he has not shown how the denial of the regular visitation changed his sentence or was otherwise atypical"); *Perry v. Lackawanna Cnty. Child. & Youth Servs.*, 345 F. App'x 723, 726 (3d Cir. 2009) (60 days without visitation "d[oes] not qualify as an atypical or significant hardship under *Sandin*").

Plaintiff has provided, and the Court has located, no authority for the proposition that the Constitution requires a 120 minutes of visitation per week, or visitation hours crafted to comport with an inmate's family's schedule.  Simply put, there are no allegations in the Complaint establishing that providing 90 minutes of visitation time per week, rather than the 120 required by New York state prison regulations, constitutes a violation of the Due Process Clause standing alone, or that the visitation afforded Plaintiff constitutes an atypical and significant hardship as defined by *Sandin*.  The difference between 90 and 120 minutes of visitation is not of constitutional magnitude, and the fact that Plaintiff's family could not attend during the specified hours – while unfortunate – is neither unusual nor a County-imposed deprivation.

Accordingly, Plaintiff's procedural due process claim is dismissed.[5]

---

[5] Even if Plaintiff had sufficiently alleged a procedural due process claim, that claim would still fail as to Potter.

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under 42 U.S.C. § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional deprivation." *Barkai v. Mendez*, 629 F. Supp. 3d 166, 183 (S.D.N.Y. 2022).  Additionally, the Second Circuit has held that "there is no special test for supervisory liability" and "[i]nstead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).

B.  **Equal Protection**

Construing Plaintiff's Complaint liberally, it alludes to an equal protection claim through its allegation that "every other unit in the [Orange County Jail]" was "afforded two hours a week of visitation." (Compl. at 4.)

"The Equal Protection Clause is essentially a direction that all persons similarly situated should be treated alike." *Patterson v. Patterson*, No. 16-CV-844, 2019 WL 1284346, at *6 (W.D.N.Y. Mar. 20, 2019). It "does not mandate identical treatment for each individual." *Green v. Santiago*, 224 F. Supp. 3d 154, 171 (D. Conn. 2016).

> Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, the Second Circuit has long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials.

*Lopes v. Westchester County*, No. 18-CV-8205, 2020 WL 7029002, at *7 (S.D.N.Y. Nov. 30, 2020). Where a plaintiff does not claim to be a member of a constitutionally protected class, he "must show both that he was treated differently than other persons who were similarly situated

---

Here, while it might be plausible that Sheriff DuBois made the decisions with respect to visitation (even though the Complaint contains no such allegations), the Complaint contains no allegation that Potter had any personal involvement in the alleged constitutional violation, *i.e.*, allotting 90 minutes of visitation time per week to the Delta 2 housing unit in violation of state regulations. (See Compl. at 4-5, 8-9.) At most, Plaintiff alleges that he sent the July 4 Letter to Potter "again requesting we be granted the extra visit day," (*id.* at 5), and that Potter failed to respond, (*id.*). But "the mere sending and presumed receipt by some prison employee of a letter to a prison official . . . is not sufficient to plead the official's personal involvement in a violation of the inmate's constitutional rights." *Sanders v. City of N.Y.*, No. 14-CV-6156, 2016 WL 1023318, at *3 (S.D.N.Y. Mar. 8, 2016); *see Carter v. Akinyombo*, No. 21-CV-872, 2022 WL 2307679, at *5 (S.D.N.Y. June 27, 2022) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations.") (collecting cases).

Accordingly, the Complaint's allegations as to Potter's receipt of (and failure to respond to) the July 4 Letter do not establish the personal involvement necessary to hold him liable for a constitutional violation and the claims against him would be dismissed in any event.

9

and that such differential treatment was either without rational basis (a class of one claim) or was motivated by an intent to discriminate on an impermissible basis (a selective enforcement claim)." *Phillips v. City of Middletown*, No. 17-CV-5307, 2018 WL 4572971, at *6 (S.D.N.Y. Sept. 24, 2018).

Plaintiff alleges that his housing unit was not "afforded [the] 2 hours a week of visitation which every other unit in the facility is being afforded," (Compl. at 4), but he does not suggest that he or his unit fall into a protected class, *see Davis v. McCready*, No. 14-CV-6405, 2017 WL 627454, at *5 (S.D.N.Y. Feb. 15, 2017) (dismissing equal protection claim where plaintiff "does not allege that he was treated in any particular manner as a result of membership in any identifiable or suspect class; in fact, he does even allege that he is a member of any particular class"), or that the differential treatment was based on retaliation or malice, *see Lopes*, 2020 WL 7029002, at *8 (to succeed on a selective enforcement claim, a Plaintiff must allege that "the selective treatment was motivated by an intention to discriminate on basis of impermissible considerations, such as race or religion, or to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the plaintiff"); *see also Bizzarro v. Miranda*, 394 F.3d 83, 87 (2d Cir. 2005) ("To prevail [on a selective enforcement claim], plaintiffs must prove that the disparate treatment was *caused by* the impermissible motivation. They cannot merely rest on a showing of disparate treatment.") (emphasis in original) (collecting cases).[6] He thus has not stated a selective enforcement claim.

To the extent Plaintiff may have intended a "class of one" equal protection claim on behalf of his unit, his pleading is insufficient. A class-of-one plaintiff must plausibly allege that

---

[6] In fact, the allegations in the Complaint arguably suggest good faith – as evidenced by the acceptance of Plaintiff's Grievance, (*see* Compl. at 4, 7) – rather than the requisite malice or impermissible motivations, *see Lilakos v. N.Y.C.*, 808 F. App'x 4, 8 (2d Cir. 2020).

10

he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). This requires that he plead "an extremely high degree of similarity" to proposed comparators. *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59-60 (2d Cir. 2010).

> The plaintiff must establish that [he] is *prima facie* identical to a comparator by showing that: (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*Lepper v. Scordino*, No. 22-1064, 2023 WL 4004220, at *2 (2d Cir. June 15, 2023) (summary order).

Plaintiff alleges that other housing units in the facility got four visitation sessions per week, and that he was told that his unit received fewer because it was smaller. (Compl. at 7.) He also alleges that a unit with fewer cells than his – apparently a medical unit ("med 1") – got four sessions. (*Id.*) But without much more information about the various units, "the plaintiff has not asserted facts to show the necessary degree of similarity between [his unit] and other [units] in order to state a class of one equal protection claim." *Jusino v. Rinaldi*, No. 18-CV-2004, 2019 WL 1596574, at *8 (D. Conn. Apr. 15, 2019). Plaintiff's unit is different at least in size from the comparators, and there may well be other respects in which they differ. *See Booker v. Griffin*, No. 16-CV-72, 2019 WL 3423262, at *4 (S.D.N.Y. July 30, 2019) ("broad categories" insufficient to demonstrate the level of specificity required by class-of-one claims, "as they do not permit an inference that the members of these classes are so similar to Plaintiff that no rational person could see them as different."); *see also Telesford v. Annucci*, 693 F. App'x 1, 4 (2d Cir. 2017) (summary order) (that two differently treated blocks are both special housing units "by itself does not admit an inference that all SHUs, much less the inmates housed therein, are

11

highly similar"). Nor has Plaintiff supplied facts from which it can be inferred that the differential treatment of his unit was not a mistake. He also fails to provide facts from which I could infer that there was no legitimate penological interest for the difference in treatment. *See id.* Accordingly, any "class of one" equal protection claim Plaintiff may have intended is dismissed. But because he may be able to provide the requisite detail, I will allow him to replead.

### C. Familial Association

To the extent that Plaintiff is attempting to assert a § 1983 claim concerning his right to maintain associations with his family members pursuant to the First Amendment, that claim is also dismissed.

"The Supreme Court and courts within this District have found that an inmate does not retain rights inconsistent with proper incarceration and freedom of association is among the rights least compatible with incarceration." *Drew v. City of N.Y.*, No. 18-CV-10719, 2022 WL 19705, at *4 (S.D.N.Y. Jan. 3, 2022). Thus, while "the Constitution protects certain kinds of highly personal relationships and there exists a right to maintain certain familial relationships, including association among members of an immediate family, some curtailment of that freedom must be expected in the prison context." *Miller v. Annucci*, No. 17-CV-4698, 2019 WL 4688539, at *13 (S.D.N.Y. Sept. 26, 2019); *see Overton v. Bazzetta*, 539 U.S. 126, 137 (2003) (rejecting constitutional challenge to two-year ban on visitation for prisoners with multiple substance abuse violations and acknowledging that "[i]f the withdrawal of all visitation privileges were permanent or for a much longer period, or if it were applied in an arbitrary manner to a particular inmate, the case would present different considerations").

12

And while the Second Circuit has "[a]ssum[ed]" without deciding "that prisoners have a right under the First Amendment to have family visits," it also stressed that such a "right could not require that visits by family members be permitted on demand, but rather must be subject to reasonable restrictions on the time, place and manner of visits," although "the intentional or malicious deprivation of visitation to a prisoner . . . could rise to the level of a constitutional violation." *Mills v. Fischer*, 497 F. App'x 114, 116 (2d Cir. 2012) (summary order); *see McClemore v. Bosco*, No. 14-CV-626, 2018 WL 1193308, at *14 (N.D.N.Y. Feb. 2, 2018) ("It is well-settled law that inmates do not enjoy an absolute right to visitation.").

Here, Plaintiff alleges that his housing unit was allocated thirty minutes of visitation every Tuesday, Thursday, and Sunday, which conflicted with his family's schedule, curtailing his ability to see them. (*See* Compl. at 8-9.) Such a restriction "does not seriously, if at all, actually curtail his freedom to associate and to receive visitors." *Amaker v. Annucci*, No. 14-CV-9692, 2016 WL 5720798, at *4 (S.D.N.Y. Sept. 30, 2016), *aff'd*, 721 F. App'x 82 (2d Cir. 2018). The visitation schedule at issue "d[id] not limit the number of visitors [Plaintiff] can receive, which visitors [he] can receive, or how often [he] can receive them." *Id.* There is likewise no indication that Plaintiff would not have been able to visit with his family were the mother of his children to change her work schedule. (*See* Compl. at 9); *cf. Patterson v. City of N.Y.*, No. 11-CV-7976, 2012 WL 3264354, at *7 (S.D.N.Y. Aug. 9, 2012) (dismissing plaintiff's claim asserting that prolonged registration process led visitors to leave prison before visits because plaintiff still entitled to receive visitors and "those visitors could have seen him if they had waited for the registration process to be completed"). Simply put, the allegations in the Complaint fall far short of establishing the "withdrawal of all visitation privileges," *Overton*, 539

13

U.S. at 137, or that Plaintiff was "intentional[ly] or malicious[ly] depriv[ed] of visitation," *Mills*, 497 F. App'x at 116.[7]

Accordingly, any familial association claim is dismissed.

### D.   Municipal Liability

Plaintiff appears to allege that the County is liable for the constitutional torts of its employees, pursuant to 42 U.S.C. §1983. (*See* Compl. at 3-5.) Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978), and its progeny, a municipality may be held liable where a plaintiff shows: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (2d Cir. 2010).

But there can be no *Monell* liability absent an underlying constitutional violation. *See, e.g.*, *Fappiano v. City of N.Y.*, 640 F. App'x 115, 121 (2d Cir. 2016) ("[I]n the absence of an underlying constitutional violation by a [municipal] employee there is no municipal liability under *Monell*."); *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) (district court correctly determined that municipality "cannot be liable under *Monell* where Plaintiff cannot establish a violation of his constitutional rights"); *Vasquez v. County of Rockland*, No. 13-CV-5632, 2020 WL 883514, at *7 (S.D.N.Y. Feb. 24, 2020) ("Failure to establish an underlying constitutional

---

[7] Insofar as Plaintiff is claiming that his First Amendment right to freedom of association was violated simply because he received 90, rather than 120, minutes of visitation per week, (*see* Compl. at 4, 7-9), his claim fails for the same reasons. And, of course, it would be wholly inimical to sound prison administration to hold that visitation schedules had to be tailored to the availability of individual prisoners' visitors. *See Rosado v. Maxymillian*, No. 13-CV-359, 2020 WL 12862653, at *18 (N.D.N.Y. Nov. 12, 2020) (reasonable restrictions on visits permitted, and no First Amendment right to visits on demand), *aff'd*, No. 20-3965, 2022 WL 54181 (2d Cir. Jan. 6, 2022); *cf. King v. Bradshaw*, No. 20-CV-126, 2020 WL 1550226, at *3 (E.D. Tenn. Mar. 31, 2020) (First and Sixth Amendment right to meaningful access to an attorney "does not require prison officials to provide access by any one particular means, or to provide that access on any particular schedule demanded by inmates").

14

violation necessarily defeats a *Monell* claim.") (collecting cases).  Therefore, because Plaintiff has failed to establish any of the foregoing constitutional claims, there can be no *Monell* liability here.

Accordingly, Plaintiff's claims against the County are dismissed.[8]

### E.      Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).  "Leave to amend . . . may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, the Court already granted Plaintiff leave to amend, after he had the benefit of a pre-motion letter from Defendants, (*see* ECF No. 12), and the Court's observations during the pre-motion conference, (*see* Minute Entry dated Jan. 6, 2023).  But Plaintiff failed to do so.

Generally, the failure to fix deficiencies in an initial pleading, after being provided notice of those deficiencies, is alone sufficient ground to deny leave to amend.  *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was

---

[8] Plaintiff seeks one million dollars in damages for "pain [and] suffering, emotional distress, [and] mental anguish" resulting from the alleged constitutional violations. (Compl. at 5.)  Defendants object that under the Prison Litigation Reform Act, Plaintiff cannot collect compensatory damages for emotional or mental injury in the absence of physical injury, and that punitive damages are not available absent malice or reckless or callous indifference to Plaintiff's rights. (ECF No. 21 at 6-7.)  Because all of Plaintiff's substantive claims have been dismissed, I need not reach Defendants' arguments concerning damages.  *See Pierce v. Fordham Univ., Inc.*, No. 15-CV-4589, 2016 WL 3093994, at *6 n.6 (S.D.N.Y. June 1, 2016) ("In light of the fact that Plaintiff fails to state a valid claim against the . . . Defendants, the Court need not — and does not — reach their separate arguments for dismissal of . . . all claims for monetary damages."), *aff'd*, 692 F. App'x 644 (2d Cir. 2017).

15

aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim."); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (cleaned up).

Further, Plaintiff has not suggested that he is in possession of facts that would cure the deficiencies identified in this ruling.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend).

And "[a]lthough *pro se* plaintiffs are generally given leave to amend a deficient complaint, a district court may deny leave to amend when amendment would be futile because the problem with the claim is substantive and better pleading will not cure it." *Washington v. Westchester Cnty. Dep't of Corr.*, No. 13-CV-5322, 2014 WL 1778410, at *8 (S.D.N.Y. Apr. 25, 2014); *see Roundtree v. N.Y.C.*, No. 19-CV-2475, 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (collecting cases). Such is the case with Plaintiff's constitutional claims, as explained above, with the possible exception of the class-of-one equal protection claim.

Accordingly, except as to that claim, I decline to grant leave to amend *sua sponte*.

### IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. No later than October 25, 2023, Plaintiff may file an Amended Complaint raising the class-of-one claim, if he can provide facts meeting the relevant pleading standards. If no Amended Complaint is filed by that date, the Court will enter judgment for Defendants and close the case. The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 19).

**SO ORDERED.**

Dated: September 22, 2023
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.